Alex Umansky (AU7961)
OLENDERFELDMAN LLP
1180 Avenue of the Americas, 8th Floor,
New York, NY 10036
(908) 964-2453
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **GREGORY HAVIO,**<br><br>            **Plaintiff,**<br><br>  -against-<br><br>**QUALITY HEALTH CARE MGT. INC., d/b/a QUALITY LABORATORY SERVICE, ALEKSEY VASILYEV, individually, ANNA SOKALOV, individually, and ALEXANDER KHARAZ, individually,**<br><br>            **Defendants.** | Case No. |

Plaintiff Gregory Havio (hereinafter "Plaintiff" or "Mr. Havio"), upon personal knowledge as to some matters and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1. This lawsuit seeks to recover minimum wages, agreed upon wages, and other damages for Plaintiff arising from his employment at Quality Health Care Mgt. Inc. d/b/a Quality Laboratory Service ("QLS"), Aleksey Vasilyev ("Vasilyev"), Anna Sokalov ("Sokalov"), and Alexander Kharaz ("Kharaz") (collectively referred to as "Defendants")

2. Based at 2651 East 14th Street Brooklyn NY 11235, QLS is a clinical laboratory operating in various states, including New York and New Jersey.[1]

3. QLS advertises that it "offer(s) the most advanced FDA-approved COVID-19 testing solutions on the market."

---

[1] *See* Company Profile, About QLS, QLS Website (*available at* https://www.qualitylaboratory.com/page.php?CPID=9) (last accessed July 5, 2022).

4. QLS directly hires individuals, such as Plaintiff, to conduct COVID-19 testing for QLS's clients, including the Titus School, located at 90 John Street, New York, NY 10038. QLS hired Plaintiff and is the corporate entity that directly paid Plaintiff his wages.

5. For instance, QLS maintains records of work performed by Plaintiff and other testers. Specifically, Plaintiff was required to check in with QLS upon any issues at the job location, such as the Titus School, and submit invoices for all tests performed after completing a job.

6. QLS also required Plaintiff to maintain a sign-in sheet of all individuals tested at the Titus School, including students and staff members.

7. QLS also provides detailed step-by-step instructions outlining how and what Plaintiff was supposed to do at the job site. Plaintiff was required to follow these instructions and was not allowed to deviate from its instructions.

8. QLS also provides much of the testing materials and equipment used by Havio, such as syringes, swabs, tubes and requisition forms, necessary for performing the COVID-19 testing at certain job locations.

9. QLS clients, including the Titus School, contact QLS directly for updated scheduling of COVID-19 testing, which is then communicated to Plaintiff. Thus, QLS controls Plaintiff's schedule.

10. As a result, QLS is an employer of Plaintiff under the FLSA and NYLL regardless of subcontractor used.

11. Further, Defendants failed to provide adequate wage notices and accurate wage statements to Plaintiff.

12. Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.* to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived him of

his lawfully earned wages.

13. Plaintiff also brings this action to remedy violations of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## THE PARTIES

**Plaintiff Havio**

14. Mr. Havio is an adult individual who is a resident of Edgewater, New Jersey, Bergen County.

15. Mr. Havio was employed by Defendants to conduct COVID-19 tests at the Titus School from approximately January 15, 2022 to March 31, 2022.

16. Mr. Havio is a covered employee within the meaning of the FLSA and NYLL.

**Defendants**

17. Defendants have employed and/or jointly employed Plaintiff at all times relevant.

18. Each Defendant has had substantial control over Plaintiff's working conditions, and over the unlawful policies and practices alleged herein.

19. Defendants are part of a single integrated enterprise that has jointly employed Plaintiff at all times relevant.

20. During all relevant times, Defendants' operations have been interrelated and unified.

21. Each Defendant has had substantial control over Plaintiff's working conditions, and over the unlawful policies and practices alleged herein.

**Quality Health Care Mgt. Inc. d/b/a Quality Laboratory Service**

22. QLS is a domestic business corporation organized and existing under the laws of New York with a principal place of business located at 2651 East 14th Street, Brooklyn, New York

11235.

23.QLS is the corporate entity that has appeared on some of Plaintiff's paychecks for work performed at for Defendants and at the Titus School.

24.QLS is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant, has employed Plaintiff.

25.At all relevant times, QLS has maintained control, oversight, and direction over Plaintiff, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

26.Upon information and belief, at all relevant times QLS has an annual gross volume of sales in excess of $500,000.

**Aleksey Vasilyev**

27.Upon information and belief, Aleksey Vasilyev ("Vasilyev") is a resident of the State of New York.

28.At all relevant times, Vasilyev has been the Director of Operations at QLS.

29.At all relevant times, Vasilyev has had power over personnel decisions at QLS, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

30.At all relevant times, Vasilyev has had power over payroll decisions at QLS, including the power to retain time and/or wage records.

31.At all relevant times, Vasilyev has been actively involved in managing the day-to-day operations of QLS.

32.At all relevant times, Vasilyev has had the power to stop any illegal pay practices that harmed Plaintiff.

33.At all relevant times, Vasilyev has had the power to transfer the assets and/or

liabilities of QLS.

34. At all relevant times, Vasilyev has had the power to declare bankruptcy on behalf of QLS.

35. At all relevant times, Vasilyev has had the power to enter into contracts on behalf of QLS.

36. At all relevant times, Vasilyev has had the power to close, shut down, and/or sell QLS.

37. Vasilyev is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiff.

**Anna Sokalov**

38. Upon information and belief, Anna Sokalov ("Sokalov") is a resident of the State of New York.

39. At all relevant times, Sokalov has been the General Manager of QLS.

40. At all relevant times, Sokalov has had power over personnel decisions at QLS, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

41. At all relevant times, Sokalov has had power over payroll decisions at QLS, including the power to retain time and/or wage records.

42. At all relevant times, Sokalov has been actively involved in managing the day-to-day operations of QLS.

43. At all relevant times, Sokalov has had the power to stop any illegal pay practices that harmed Plaintiff.

44. At all relevant times, Sokalov has had the power to transfer the assets and/or liabilities of QLS.

45. At all relevant times, Sokalov has had the power to declare bankruptcy on behalf of QLS.

46. At all relevant times, Sokalov has had the power to enter into contracts on behalf of QLS.

47. At all relevant times, Sokalov has had the power to close, shut down, and/or sell QLS.

48. Sokalov is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiff.

**Alexander Kharaz**

49. Upon information and belief, Alexander Kharaz ("Kharaz") is a resident of the State of New York.

50. At all relevant times, Kharaz has been the Chief Operating Officer of QLS.

51. At all relevant times, Kharaz has had power over personnel decisions at QLS, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

52. At all relevant times, Kharaz has had power over payroll decisions at QLS, including the power to retain time and/or wage records.

53. At all relevant times, Kharaz has been actively involved in managing the day-to-day operations of QLS.

54. At all relevant times, Kharaz has had the power to stop any illegal pay practices that harmed Plaintiff.

55. At all relevant times, Kharaz has had the power to transfer the assets and/or liabilities of QLS.

56. At all relevant times, Kharaz has had the power to declare bankruptcy on behalf of

QLS.

57. At all relevant times, Kharaz has had the power to enter into contracts on behalf of QLS.

58. At all relevant times, Kharaz has had the power to close, shut down, and/or sell QLS.

59. Kharaz is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, has employed and/or jointly employed Plaintiff.

## JURISDICTION AND VENUE

60. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

61. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

62. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PLAINTIFF'S FACTUAL ALLEGATIONS

63. Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

64. Mr. Havio was employed as a COVID-19 tester at QLS from approximately January 15, 2022 to March 31, 2022. In this role, Mr. Havio's job duties included performing COVID-19 tests for QLS clients.

65. Specifically, Mr. Havio was employed to conduct COVID-19 testing of all individuals, including students and staff members, at the Titus School located at 90 John Street, New York, NY 10038.

66. At all relevant times, Defendants agreed to compensate Mr. Havio on a monthly basis. Specifically, Defendants maintained a policy and practice in which it agreed to pay Mr. Havio Twenty Dollars ($20.00) for each COVID-19 test conducted.

67. Although Defendants compensated Mr. Havio for work he performed in January 2022, Defendants did not pay Mr. Havio for this work until March 2, 2022, more than a month after the work was performed. Additionally, Defendants wholly failed to pay Mr. Havio any wages including his agreed upon regular rate of pay for February and March of 2022.

68. In February 2022, Mr. Havio conducted Eight Hundred (800) COVID-19 tests for Defendants of individuals at the Titus School.

69. Defendants failed to compensate Mr. Havio for any of the work conducted in February 2022, for a total of Sixteen Thousand Dollars (**$16,000.00**) ($20.00 x 800 COVID-19 tests).

70. In March 2022, Mr. Havio conducted One Thousand Eighty (1,080) COVID-19 tests for Defendants of individuals at the Titus School.

71. Defendants failed to compensate Mr. Havio for any of the work conducted in March 2022, for a total of Twenty-One Thousand Six Hundred Dollars (**$21,600.00**) ($20.00 x 800 COVID-19 tests).

72. Defendants improperly withheld a total of Thirty-Seven Thousand Six Hundred Dollars (**$37,600.00)** of Mr. Havio's earned wages for work performed for QLS in February and March 2022.

73. Despite Mr. Havio's repeated written requests to Defendants for payment of his properly owed wages, Defendants ignored his demand for same in violation of the FLSA and NYLL.

74. Defendants failed to accurately keep track of Mr. Havio's hours and compensate him

Case 1:22-cv-03957-LDH-MMH   Document 1   Filed 07/06/22   Page 9 of 14 PageID #: 9

for all work performed.

75. Additionally, Defendants failed to furnish Mr. Havio with proper wage statements, as required by the NYLL.

## FIRST CAUSE OF ACTION
### Fair Labor Standards Act – Minimum Wages

76. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

77. At all times relevant, Plaintiff was employed by an entity engaged in commerce and/or the production or sale of goods or services for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or they were engaged in commerce and/or the production or sale of goods or services for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

78. At all times relevant, Plaintiff was an employee within the meaning of 29 U.S.C §§ 201 et seq.

79. At all times relevant, Defendants have been employers of Plaintiff, engaged in commerce and/or the production of goods or services for commerce within the meaning of 29 U.S.C §§ 201 et seq.

80. Defendants have been required to pay directly to Plaintiff the full minimum wage rate for all hours worked.

81. Defendants failed to pay Plaintiff at the applicable minimum hourly rate for all hours worked.

82. As a result of Defendants willful violations of the FLSA, Plaintiff has suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

## SECOND CAUSE OF ACTION
### New York Labor Law – Minimum Wages

83. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

84. The minimum wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiff.

85. Defendants failed to pay Plaintiff at the applicable minimum hourly wage for all hours worked.

86. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants his unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## THIRD CAUSE OF ACTION
### New York Labor Law – Failure to Pay Agreed Upon Wages

87. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

88. The wage provisions of Article 6 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiff.

89. Pursuant to NYLL, Article 6 § 191(1)(d), Defendants are required to pay Plaintiff the wages he has earned in accordance with the agreed terms of his employment, but not less frequently than semi-monthly, on regular pay days designated in advance by Defendants.

90. Defendants have failed to pay Plaintiff the earned wages to which he is entitled under the NYLL and the supporting New York State Department of Labor Regulations, pursuant to the agreed-upon terms of Plaintiff's employment.

91. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants his agreed-upon earned wages, liquidated damages as provided for by the NYLL,

reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements

92. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

93. Defendants failed to supply Plaintiff with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

94. Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff is entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide him with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198 (1-d).

## FIFTH CAUSE OF ACTION
### New York Labor Law – Failure to Pay Timely Wages

95. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

96. The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiff.

97. Defendants failed to pay Plaintiff on a timely basis as required by NYLL § 191(1)(a), which resulted in Plaintiff being underpaid.

98. Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from

Defendants the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Wage Notice**

99. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

100. Defendants have failed to supply Plaintiff with a proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as his primary language, at the time of hiring, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

101. Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff is entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide him with wage notices, or a total of three thousand seven hundred and fifty dollars, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A. Unpaid wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

B. Unpaid wages and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

C. Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiff with accurate wage statements, or a total of five thousand dollars, as provided for by NYLL, Article 6 § 198;

D. Liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

E. Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff with proper time of hire/annual wage notices, or a total of three thousand seven hundred and fifty dollars, as provided for by NYLL, Article 6 § 198

F. Prejudgment and post-judgment interest;

G. Reasonable attorneys' fees and costs of the action; and

H. Such other relief as this Court shall deem just and proper.

Dated: New York, New York
July 6, 2022

Respectfully submitted,

/s/ Alex Umansky
Alex Umansky (AU7961)

**OLENDERFELDMAN LLP**
1180 Avenue of the Americas, 8th Floor
New York, NY 10036
(908) 964-2453
*Attorneys for Plaintiff*

- 14 -